IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

CHRISTY LYN WINSTON                          CV 08-6395-MA

       Plaintiff,                          OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.


KATHRYN TASSINARI
BRENT WELLS
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541) 686-1969

     Attorneys for Plaintiff


1 - OPINION AND ORDER

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

THOMAS M. ELSBERRY
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2112

        Attorneys for Defendant


MARSH, Judge.

        Plaintiff Christy Lyn Winston seeks judicial review of

the Commissioner's final decision denying her January 18, 2006,

application for supplemental security income benefits (SSI) under

Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

        Plaintiff alleges she has been disabled since November 21,

2005, because of a bipolar disorder, diabetes, hypertension,

asthma, obesity, and anxiety.  Her claim was denied initially and

on reconsideration.  On March 19, 2008, the Administrative Law

Judge (ALJ) held an evidentiary hearing and on April 18, 2008, he

issued a Notice of Decision that plaintiff is not disabled.  On

October 7, 2008, the Appeals Council denied plaintiff's request

for review.  The ALJ's decision, therefore, is the Commissioner's

final decision for purposes of judicial review.


2 - OPINION AND ORDER

Plaintiff seeks an Order reversing the Commissioner's final decision and remanding the case for the payment of benefits or, in the alternative, remanding the case for further proceedings. For the following reasons, I **REVERSE** the final decision of the Commissioner and **REMAND** this matter for the immediate payment of benefits.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987). <u>See also</u> 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. <u>See Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since December 30, 2005.

At Step Two, the ALJ found plaintiff suffers from severe impairments of asthma, obesity, lower extremity obesity, diabetes mellitus, osteoarthritis, venous insufficiency, bipolar disorder, and panic disorder with agoraphobia. <u>See</u> 20 C.F.R. §416.920© (an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments do not meet or equal a listed impairment. Plaintiff has the

residual functional capacity to lift/carry 20 lbs occasionally
and 10 lbs frequently, and stand/walk/sit for at least six hours
in an eight-hour workday.  She must avoid fumes, dust, and
hazards such as unprotected heights.  She is unable to follow
detailed instructions and should avoid engaging in ongoing
interactive teamwork, working with the general public, or being
among crowds.

At Step Four, the ALJ found plaintiff is unable to perform
her past relevant jobs as a care-giver or stock clerk because
they involve interaction with the general public and the need to
follow detailed instructions.

At Step Five, the ALJ found plaintiff retains the residual
functional capacity to perform light work in representative jobs
such as garment sorter and merchandise marker, which exist in
substantial numbers in the state and national economies.

Consistent with these findings, the ALJ found plaintiff is
not disabled and, therefore, is not entitled to SSI.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to
establish disability.  <u>Roberts v. Shalala</u>, 66 F.3d 179, 182
(9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996).  To meet
this burden, the claimant must demonstrate the inability "to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which . . .

4 - OPINION AND ORDER

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the

court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert.
denied, 121 S. Ct. 628 (2000).  "If additional proceedings can
remedy defects in the original administrative proceeding, a
social security case should be remanded." Lewin v. Schweiker,
654 F.2d 631, 635 (9th Cir. 1981).

### ISSUES ON REVIEW

The issues raised by plaintiff on review are whether
(a) the ALJ gave clear and convincing reasons for rejecting
plaintiff's testimony, (b) the ALJ gave germane reasons for
rejecting lay witness evidence offered by plaintiff's mother, and
© whether (1) the ALJ erred in finding plaintiff has the residual
functional capacity to perform work that exists in the national
economy, and (2) the Appeals Council failed to give appropriate
credit to the report of examining psychologist Judith Eckstein,
Ph.D., submitted to it by plaintiff after the ALJ issued his
decision.

### RELEVANT RECORD

**Plaintiff's Evidence**.

Plaintiff's evidence is derived from her disability report,
hearing testimony, and work history report.

**a.  Education/Work History.**

Plaintiff was 39 years old on the date of the hearing.  She
is a high school graduate and completed three years of college.

6 – OPINION AND ORDER

In 2003, she completed training as a certified nurse's assistant.

In 2000-2001, plaintiff worked full- and part-time at K-Mart stocking shelves.  The job involved lifting up to 20 lbs.

From 2003-2005, plaintiff worked as a care-giver for the elderly.  When she started, plaintiff worked six hours a day but those hours were reduced to one hour a day because she "couldn't take it."  The job involved mopping floors and lifting and carrying mops and buckets weighing less than 10 lbs.

**b.  Medical Issues.**

Plaintiff states her allegedly disabling conditions are bipolar disease and uncontrolled diabetes.  She takes Glucophage and Lantus to treat diabetes, Actos to treat depression and anxiety, and Haldol to treat auditory hallucinations.  Her impairments first bothered her in 1987.

Plaintiff's eyesight is adversely affected by diabetes.  She has had laser surgery and cataract removal in both eyes, but she still has retina wrinkle and bleeding in her left eye and a cataract in her right eye.  She becomes dizzy and sleepy when her blood sugar level is elevated.  Plaintiff is prescribed Naprosyn to ease pain in her back and knees, which she rates at 6 on a scale of 1-10.

On one occasion, plaintiff burned her leg when she was putting logs on a fire at a friend's house.  She was treated at a

7 - OPINION AND ORDER

hospital and contracted MRSA, which is a staph infection that remains in the bloodstream.  Nowadays, when she goes to the hospital, she is placed in isolation.

Plaintiff's depression has caused her to have suicidal thoughts "a few times," but she has never made a plan to commit suicide.

Plaintiff is prescribed Paxil, Wellbutrin, and Tegretol to treat her depression.  They make her feel drowsy.  Haldol, which is prescribed for her bipolar condition, causes her to mumble and feel nervous.  She has anxiety attacks in crowds, preventing her from grocery shopping.

**c.  Daily Activities.**

Plaintiff lives with her mother and daughter.  She gets up at 6:00 a.m.  On bad days, she remains in her bedroom most of the day, watching television.  On the fewer good days, she interacts with her mother.  Two or three times a week she helps her mother wash dishes and do laundry.  Her mother does most of the other housekeeping, including cooking and cleaning, because plaintiff is usually too depressed to interact with her.  Plaintiff drives her daughter to and from school, fixes meals, watches television, plays on the computer, and takes naps.

Plaintiff sometimes has "bad" days for up to two weeks, followed by two or three "good" days.

8 - OPINION AND ORDER

**Lay Witness Evidence**.

    **a.  Marlene Hamlin.**

Plaintiff's mother, Marlene Hamlin moved into an apartment with plaintiff to help care for plaintiff's 12 year-old daughter.

She described plaintiff's mood as being different every day. Plaintiff can appear to be happy, and five minutes later she is severely depressed, crying and shaking.  She may have panic attacks when shopping that are severe enough to cause her to leave the store.  She functions a little better on medication, "but not really."  She sometimes acts like a zombie, staring into space.  Hamlin does the housekeeping because she loves to clean house.  Hamlin is legally blind, but she knows the apartment well and she and her granddaughter, who acts as her eyes, do the cooking together.

Plaintiff "[a]bsolutely tried" to get up and go to work but "it's just impossible" and has "gotten worse and worse."  When plaintiff worked as an in-home care-giver, she had difficulty giving insulin shots or other necessary medications to the people for whom she was providing care.  Plaintiff was unable to handle the job.

Plaintiff tries to control her anger, but she becomes "real crabby," although she is never "physically violent."

**b.  Karen Boling.**

In 2006, plaintiff lived in Boling's home.  Boling completed a daily activities form stating plaintiff "has problems due to mental disabilities."  She cannot function well around people, like shopping in large stores; she sometimes needs to be reminded to take medication when "she has panic attacks, mental anguish;" she does the laundry, some cleaning, dishes, and takes out the garbage, but each day is different depending on her mental condition.  Plaintiff has problems in large stores because she has "very bad panic attacks."  Boling summarized that plaintiff "still has nightmares, can't handle stress, can't be out in larger groups of people, can't handle being around people she doesn't know, still has panic attacks, crying spells, [and she] gets upset easily at times."  She lives with other people because they are able to help her.

**Medical Treatment Evidence.**

**a.  Umpqua Community Health Center.**

In early December 2003, plaintiff was seen in a follow-up visit for treatment of Type II uncontrolled diabetes mellitus. She reported that an eye exam several months earlier showed mild changes for which no treatment was required.  She stated she was monitoring her diet and the amount of her carbohydrate and sugar intake but she did not think her oral medications were working. She was thirsty, hungry and urinating frequently.  Her medication

10 - OPINION AND ORDER

was switched to insulin injections.

In mid-December 2003, plaintiff complained of swelling and blurriness in her left eye, a burning sensation and headache, all of which were attributed to changes in her blood sugar levels.

In late December 2003, plaintiff's vision was improved somewhat and her blood sugar levels were better controlled, although they were low in the morning, causing her some shakiness and "feeling weird."  Plaintiff stated her depression and anxiety had increased even though the Lexapro medication she was prescribed "helped somewhat."  She was advised to seek mental health counseling and therapy.

In late January and early February 2004, plaintiff reported "significant improvements in regards to blood glucose control." Her blood pressure, however, was elevated.

**b.  Mercy Medical Center.**

In February 2004, plaintiff was treated for an abscess with cellulitis on her right thigh that caused a low grade fever.  The abscess was drained and was identified as an infection that is resistant to certain antibiotics.

In September 2004, plaintiff had pain, swelling, and redness in her left ankle.  X-rays did not show any sign of thrombosis.

In November 2004, plaintiff underwent an MRI of her left knee with unremarkable findings.

In January 2006, plaintiff was admitted for five days to

11 - OPINION AND ORDER

the psychiatric unit with a diagnosis of a schizoaffective
disorder.  Her GAF on admission was rated at 40 (some impairment
in reality testing or communication or a major impairment in
several areas, such as work or school, family relations,
judgment, thinking, or mood).  She reported that she experienced
suicidal thoughts the night before and had wanted to cut herself.
She heard voices instructing her to harm herself.  However,
she did not try and did not want to hurt herself.  She was
motivated to seek treatment.  On discharge, she was "definitely
improved," was "not psychotic," and her "agitation" and "mood"
were better.

In December 2006, plaintiff was admitted to the hospital for
a "fairly extensive second-degree burn on her leg after a burning
log in the wood stove caught her right leg pant on fire.  It was
noted that her diabetes was under poor control.  She was
discharged 11 days later.

In February 2007, an x-ray of the right foot showed no
fracture or arthritic changes.

**c.  DC Internal Medicine - Srividya Venigalla, M.D.**
**- David Weingarten, M.D.**

In April 2004, Dr. Weingarten treated plaintiff for the skin
infection on her thigh, diabetes, hypertension, anxiety and
depression.

In May 2004, Dr. Weingarten diagnosed obesity, anxiety and

12 - OPINION AND ORDER

depression that might be Bipolar 2, and diabetes.

In June 2004, plaintiff was treated for recurrent skin infections.

In mid-August 2004, Dr. Weingarten noted plaintiff's diabetes was uncontrolled and her depression was fluctuating. Later that month, her diabetes was controlled "with recent changes" but plaintiff was having increased mood swings, anxiety, depression, and difficulty sleeping.

In September 2004, plaintiff stepped in a hole and hyperextended her ankle that caused swelling and pain in her foot.

In December 2004, plaintiff's diabetes was uncontrolled, and she exhibited retinopathy symptoms.  She was urged to lose weight, diet, and exercise.

In April 2005, plaintiff was hospitalized for bilateral pneumonia and asthma.  Her diabetes was under "suboptimal control."  She also complained of lower back pain.

In May-June 2005, plaintiff's diabetes was under better control.

In July 2005, plaintiff complained of chest pain with shortness of breath and symptoms down her arm.  She had difficulty sleeping.  Tests suggested plaintiff possibly suffered from borderline sleep apnea.

In September 2005, plaintiff stated she had right knee pain

for two months, particularly when she climbed stairs or
straightened her leg.

In December 2005 and January 2006, plaintiff's diabetes was
under better control.

In February 2007, plaintiff fell and sprained her right
ankle. Her diabetes was not well-controlled.

In June 2007, an x-ray of plaintiff's right knee showed
normal bone mineralization, with fractures on dislocations.
There was a moderate-sized joint effusion.

In August 2007, plaintiff's diabetes was uncontrolled and
had worsened. She continued to have knee pain.

In October 2007, plaintiff's thyroid was low and her
cholesterol was a little high. Dr. Venigalla noted that
plaintiff's kidneys were beginning to be affected by diabetes.

In December 2007, plaintiff complained of left knee pain
with tenderness over the intrapatellar bursa and around the
margins of the knee cap.

**d. Gary Servais, M.D.**

In March 2006, Dr. Servais treated plaintiff for decreasing
vision in her left eye caused by a "very leaky microaneurysm."

In May 2006, plaintiff's vision in her left eye had
worsened. Dr. Servais recommended cataract surgery. The surgery
was performed three months later and plaintiff was "doing quite
well."

14 - OPINION AND ORDER

**Medical Consultation Evidence**.

    **Martin Kehrli, M.D.**

    Dr. Kehrli reviewed plaintiff's medical records and opined that plaintiff had the residual functional capacity to lift 20 lbs occasionally and 10 lbs frequently, and stand/sit/walk about six hours in an eight-hour workday.  Plaintiff has an unlimited ability to push/pull.  She has no postural, manipulative, visual, or communicative limitations.  Her only environmental limitation is to avoid concentrated exposure to fumes.  Dr. Kehrli opined that plaintiff's "allegations of bipolar, depression, anxiety, panic, dyslexia, agoraphobia, diabetes, hypertension, asthma, and obesity could result in limitations such as panic attacks, hard time getting out of bed."  Plaintiff's "statements of inability to get out of bed and panic are consistent w/acute, discrete episodes only and are found partially credible."

**Psychological Treatment/Counseling Evidence**.

    **Douglas County Mental Health**.

    From October 2004 through November 2007, plaintiff received weekly and/or biweekly counseling for diagnoses of bipolar disorder I and panic disorder with agoraphobia.

    Plaintiff's GAF score at the beginning of her treatment was at a low of 50 (serious difficulty), and improved to a range of 55-60 (moderate difficulty) in social, occupational, or school

15 - OPINION AND ORDER

functioning) as the treatment progressed.

**Psychological Evaluation Evidence.**

**Judith Eckstein, Ph.D.**

In August 2008, psychologist Judith Eckstein reviewed plaintiff's records from Douglas County Mental Health and performed a mental health evaluation of plaintiff that included IQ testing on which plaintiff scored in the low average range.

Dr. Eckstein diagnosed plaintiff with bipolar I, most recent episode depressed, with psychotic features, panic disorder with agoraphobia, social phobia, and personality disorder NOS with borderline and dependent features.  She opined plaintiff has moderate to marked limitations in understanding or remembering short or detailed instructions, sustaining concentration and persistence, social interaction, and adaptation.  These limitations had existed or could be expected to exist for at least 12 continuous months.  Dr. Eckstein assigned a current GAF score of 50 and opined that plaintiff's "limitations have existed at a fairly consistent severity since she first applied for disability benefits on December 30, 2005."  She opined that plaintiff's "condition appears chronic with a guarded prognosis."

**Psychological Consultation Evidence.**

**Frank G. Lahman, Ph.D.**

Based on a review of medical records, Dr. Lahman opined plaintiff suffers bipolar 1 vs. II disorder and a panic disorder with agoraphobia. He concluded plaintiff has moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. He repeated Dr. Kehrli's comments regarding plaintiff's "partial credibility."

<u>**ANALYSIS**</u>

**<u>The ALJ's Findings</u>.**

**a. Rejection of Plaintiff's Testimony.**

Plaintiff contends the ALJ did not give clear and convincing reasons for not crediting her testimony regarding the severity of her impairments.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). <u>See</u> <u>also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant need not produce objective medical evidence of the symptoms or their severity. <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering,

17 - OPINION AND ORDER

the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  <u>See also</u> <u>Smolen</u>, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  <u>Id</u>. at 1284 (citations omitted).

Here there is no evidence of malingering.  The ALJ, however, found that plaintiff's statements concerning "the intensity, persistence, and limiting effects of [her] symptoms are not credible" because her description of her daily activities "have not been limited to the extent one would expect, during the relevant time period, given the complaints of disabling symptoms and limitations."  The ALJ cites examples such as her comment to a doctor in June 2006 that she is able to walk for exercise for an hour at a time every day, the fact that she drives, shops in stores, and cares for her 10 year-old daughter.  The ALJ also concluded that the fact that plaintiff worked at a light exertional job for a period after her alleged impairments arose

18 - OPINION AND ORDER

was "persuasive evidence that she is capable of some work activity."

The Commissioner contends the ALJ, based on this record, properly found plaintiff's daily activities were incompatible with her alleged degree of incapacity.  I disagree.  Plaintiff wrote that she had anxiety and panic attacks when she drove.  Although she shopped in stores when she had to, the record is replete with evidence that she had panic attacks, particularly when she was in large crowded stores.  Lay witness Karen Boling wrote that plaintiff specifically lived with other people such as her who could help her.  Boling also described plaintiff's panic attacks and anxiety.  The ALJ ignored this lay evidence which supported plaintiff's credibility.  (See below).  Finally, although the ALJ correctly observed plaintiff worked in a light job as a care-giver for a period after her impairments arose, the ALJ did not mention that during that time frame, plaintiff's earnings dipped from approximately $5,000 in 2003 to $699 in 2004 and $107 in 2005.

Based on this record, the court finds the ALJ did not give clear and convincing reasons for failing to credit plaintiff's evidence regarding the severity of her symptoms, and therefore, credits as true plaintiff's testimony as to the degree of her physical limitations related to her obesity and diabetes, and her psychological limitations related to her anxiety, panic attacks,

and bipolar disorder.  <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593

(9th Cir. 2004).

**b.  Rejection of Lay Witness Evidence.**

Lay witness evidence as to a claimant's symptoms "is

competent evidence that an ALJ must take into account" unless he

"expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so."  <u>Lewis v. Apfel</u>,

236 F.3d 503, 511 (9th Cir. 2001).

<u>Marlene Hamlin</u>.

Plaintiff's mother, who lived with plaintiff, described

plaintiff's daily activities and ability to work primarily in the

context of plaintiff's psychological impairments, including panic

attacks, anxiety, anger, and "zombie-like" behavior.

The ALJ rejected Hamlin's evidence on the ground it was

based on plaintiff's self-report to Hamlin and was inconsistent

with the medical evidence.  To the contrary, Hamlin's evidence

was based on her observations of plaintiff's conduct and behavior

around the house, not on what plaintiff described to Hamlin.

Moreover, plaintiff's bipolar disorder is well-documented by

mental health treatment records that include three years of

weekly and/or bi-weekly therapy sessions at Douglas County Mental

Health.  I find, therefore, the ALJ did not give germane reasons

for not crediting Hamlin's evidence, and I credit it as true.

<u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2010).

20 - OPINION AND ORDER

Karen Boling.

As noted, Boling submitted lay evidence describing her
observations of plaintiff when plaintiff lived with Boling.  She
wrote that plaintiff tried to take care of her daily needs and
the needs of her daughter.  Plaintiff, however, "can't function
well around people like going to large stores," and that although
she cares for her daughter's needs, she "lives with other people
who can help her."  Boling also stated that plaintiff has "bad
dreams, hears voices, has panic attacks, mental anguish."

The ALJ, for no apparent reason, ignored Boling's evidence.
Therefore, I also credit this evidence as true.  Connett v.
Barnhart, 340 F.3d 871, 876 (9th Cir. 2010).

**c.  Plaintiff's Residual Functional Capacity.**

1.  The ALJ's Finding.

At Step 4, the ALJ found plaintiff is unable to perform
her past relevant work but she retains the residual functional
capacity to perform jobs including garment sorter and merchandise
marker.  He based this finding on testimony from a vocational
expert who also opined, however, that if plaintiff were to miss
work for two days a month, she might not be able hold on to the
jobs she could otherwise perform.

Based on the VE's testimony, without regard to any

21 - OPINION AND ORDER

limitation as to days plaintiff might expect to miss work, the
ALJ found plaintiff is not disabled.

Plaintiff contends the ALJ erred by ignoring her
testimony regarding the number of days she remains in her room as
a result of her psychological impairments.  I agree.  The VE
opined that if someone in plaintiff's circumstance would miss two
days of work a month, she might not be able to keep a job which
she was otherwise capable of performing.  Crediting as true
plaintiff's testimony regarding her limitations, including the
likelihood that she would miss at least two days of work a month,
the VE's testimony is not substantial evidence supporting the
ALJ's finding as to plaintiff's ability to engage in substantial
gainful activity.

2.  <u>The Appeals Council Decision</u>.

Plaintiff appealed the ALJ's adverse decision to the
Appeals Council, and in support thereof, submitted Dr. Eckstein's
written report of her psychological evaluation of plaintiff, in
which she opined plaintiff had moderate to marked limitations in
understanding or remembering short or detailed instructions,
sustaining concentration and persistence, social interaction, and
adaptation and had a consistent GAF score of 50 in recent years.

The Appeals Council received Dr. Eckstein's report
into the record and noted her assessment that plaintiff's GAF
score was 50.  The Appeals Council, however, rejected that "one-

22 - OPINION AND ORDER

time" assessment in favor of "long-time treating sources," who

have "primarily assessed the claimant with GAF scores ranging

from 55-60, which indicates moderate symptoms."

The Commissioner contends this court should limit its
review to the administrative record as it existed when the ALJ
made his final decision, thereby excluding Dr. Eckstein's
psychological evaluation.  Plaintiff, however, contends she was
unrepresented in the administrative proceedings before the ALJ,
and despite the evidence of her severe psychological impairments,
no psychological evaluation was requested by the Commissioner.

"Social Security regulations expressly authorize a
claimant to submit new and material evidence to the Appeals
Council when requesting review of an ALJ's decision." Perez v.
Chater, 77 F.3d 41, 41 (2nd Cir. 1996)(emphasis added).  See 20
C.F.R. § 404.970(b), 416.1470(b).  Moreover, where the Appeals
Council declines review of the ALJ's decision, any additional
material that the Appeals Council reviews in reaching the
decision to review the ALJ's decision becomes part of the record
on review.  Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir.
1993).

Here, there is no question Dr. Eckstein's evaluation
was material evidence as to plaintiff's disability claim in
the absence of any prior psychological evaluation undertaken to

23 - OPINION AND ORDER

address the severity of plaintiff's undisputed psychological

impairments.  Moreover, plaintiff was not represented by counsel

in the proceedings before the ALJ.  In any event, the Appeals

Council plainly took Dr. Eckstein's evaluation into account in

reaching its decision declining to review the ALJ's final

decision.

In considering Dr. Eckstein's opinion as to the

severity of her psychological impairments, it is noteworthy that

the Appeals Council highlighted the differences in the opinions

of non-acceptable medical source treatment providers, *i.e.,* nurse

practitioners, who, over a period of years assigned GAF scores

between 50 and 60, but failed to mention plaintiff's psychiatric

hospitalization in January 2006, when her GAF score assigned on

admission by an acceptable medical source was 40.

On this record, I conclude the Appeals Council erred

in crediting the opinions of non-acceptable medical sources over

the opinion of Dr. Eckstein as to the severity of plaintiff's

psychological impairments.

### REMAND

When plaintiff's evidence and the lay witness evidence of

her mother and former housemate as to the extent and severity of

plaintiff's psychological impairments are credited as true as

they must be here, and when those impairments are considered in

24 - OPINION AND ORDER

conjunction with plaintiff's severe physical impairments relating

to diabetes and its complications, and obesity, it is clear that

the ALJ would be required to find plaintiff is disabled.  <u>Harman</u>

<u>v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000).  Accordingly, I

conclude that no useful purpose would be served by remanding this

matter for further proceedings.

<u>**CONCLUSION**</u>

Accordingly, for all the reasons set forth above, the

Commissioner's final decision denying benefits to plaintiff is

**REVERSED** and this matter is **REMANDED** to the Commissioner for the

immediate payment of benefits.

IT IS SO ORDERED.

DATED this 28 day of April, 2010.

     /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

25 - OPINION AND ORDER